Case number 22-7072. Martin Doherty, appellant, versus Turner Broadcasting Systems, Inc. Mr. Doherty for the appellant, Ms. Kingham, appointed amicus curiae for the appellant, Ms. Guerrero for the appellate. Good morning, Your Honor. May it please the Court, I have a short, about a minute and a half, a few elements I'd like to get out there, unless you want to go straight to questions, if you prefer. You can go ahead with your presentation. Thank you, Your Honor. I'm requesting that this Court reverse the grant of summary judgment and remand. The District Court's decision does not flow rationally from the facts, record evidence, or the law. This case is not about the IRS or Turner's short-term disability scheme. This case is about Turner willfully filing fraudulent information returns. This case is also not about how much appellant was paid. It is about Turner's extraction of payroll taxes that they knew as an operation of law never should have been extracted, yet with willful blindness and recklessness, they did so. At the end of the day, no matter how you slice or dice it, IRS Code 26-104-A1 states that gross income does not include amounts received under workers' compensation acts. Firstly, the District Court decision asserts that how Turner paid that compensation matters in this case, and they are correct, except not for the reasons stated in the District Court's decision. The doctrine of preemption should make Turner's arguments moot and the District Court's decision unsupported. Preemption, as you well know, has federal law, state law, local law. Nowhere in there does it have Turner's corporate policy on workers' compensation or paying taxes to the IRS. Despite that, the District Court misapplied the law and essentially would have, you believe, a reasonable jury would believe that Turner has no legal obligation to adhere to IRS Code 26-104-A1 because Turner has in their own benevolent scheme to compensate their workers injured on the job through their own short-term disability program. In sum, Appellant relied on Turner's workers' compensation agreement that Appellant signed. That's at JA-449. Also, that his workers' comp wage loss benefits would be coded as workers' comp on his pay stub. That's JA-501. And that Turner follows all IRS Code, JA-508. As a result, Appellant was assessed IRS underpayment penalties of his 2015 taxes due to Turner's willful fraudulent filing of his 2015 W-2. The record evidence that the District Court decision ignored calls for a reversal and remand. It is inconceivable that Turner did not know the consequences of their actions, and there exists numerous disputable facts and questions for a jury. Thank you. Thank you, Mr. Brewer. You said, I just want to check one thing that you said. You said that Turner withheld payroll taxes for the income that it paid you that's at issue here. Yes, sir. And it's your contention that if they had properly considered this the workers' compensation payments, they would not have withheld those taxes? Correct, Your Honor. And so, is it, I guess, the fact that you have, is it your argument then that you were kind of doubly injured then because they withheld some taxes that they shouldn't have, and therefore, that was money that didn't, you couldn't put in your pocket, and this income shouldn't have been taxable federally, and obviously, you've got the tax liens and all of that. And so, it's kind of a double whammy, I guess is your point. Is that fair? Yes, Your Honor. Thank you. Any other questions? I guess, do you think that Turner was paying you workers' compensation, or do you think they were legally required to pay you workers' compensation, but they broke the law and not paid? I believe both are true. When, as soon as an injured worker files a claim in D.C., and the employer has 14 days to challenge it, they did not do that. So, my claim becomes compensable, whether or not I miss work right after the injury or not, but they were paying for medical right after my injury. I didn't go out. I went out for three different times up until 2015, when I finally had the surgery, and each of those times, they're supposed to pay me what's called the average weekly wage in D.C., and that's 66 and 2 3rds of your pay. Now, when they paid out of their short-term disability program, let's say my marginal tax rate ends up being 20%. That means I'm not getting 66 and 2 3rds, I'm getting 46 and 2 3rds. And it's a very easy remedy, and I've told them this, is that just for your 401k, your health insurance premium, it's pre-tax. They could have just put in their workers' comp, boom, and put it right there. I'm not making any money off of this. They're not spending any money off of this. They give me a corrected W-2, like I asked for, then it would have been my issue with the IRS, because the IRS goes on what they told them. They told them that my W-2 was correct, when in fact, they knew it wasn't. Thank you. We'll hear from the appointed amicus on your behalf. Thank you, Your Honor. Tiffany Yang, Counsel for Quota Appointed Amicus. With the court's permission, Victoria Kingham, a third-year law student at Georgetown University Law Center, will present argument on behalf of amicus. Thank you. We will hear from Ms. Kingham. Ms. Kingham. Morning. Morning. You'll please the court. This court should reverse the district court's grant of summary judgment and remand. There is a genuine- I wonder if you could speak a little louder. I'm having a little difficulty hearing you. There is a genuine dispute of material fact that Turner willfully filed fraudulent information returns on Mr. Daugherty's behalf. That is because, in order to obtain a tax deduction, Turner falsely included Mr. Daugherty's workers' compensation payments as part of his gross taxable income on his W-2s. Turner did this repeatedly over a period of three years, despite its knowledge that Mr. Daugherty was entitled to tax-free workers' compensation. That knowledge is manifest in Turner's own employee's email to Mr. Daugherty, stating that they were quoting his payments as workers' compensation. In addition to Mr. Daugherty's repeated emails to the company, notifying it that he was entitled to tax-free workers' compensation. The difficulty I have is the same one the district court expressed, that this statute is not directed as to what the defendant may have done wrong, at various times, but whether this particular tax documents are fraudulent. The district court says, what is the false statement in that it makes this fraud? What is the false statement of a fact that the defendant made in the tax documents makes this into a fraud? Here, the false statement was representing Mr. Daugherty's workers' compensation payments as taxable. According to the IRS, tax workers' compensation is intended to be excluded from taxable income, and therefore when Turner included it in Mr. Daugherty's gross taxable income, that rendered his W-2s fraudulent. Were there cross motions for summary judgment file? There were. So, well, I guess I would like for you to get to your argument about, we'll continue your argument, but particularly about state of mind and intent, and what the standard should be. Here, the words willfully and fraudulent are mutually reinforcing. The word fraudulent connotes a false representation with some level of scienter, and that scienter in the context of this statute is provided by the word willfully. As the Supreme Court held in Safeco, willfulness can be shown by a showing of recklessness within the context of a civil statute like this one. Therefore, a company has violated 7434A, and they have filed information returns that falsely represent an employee's gross taxable income with at least reckless disregard as to the truth of those information. But even if this court were to hold that fraudulence requires a showing of knowledge and intent, and as Turner suggests, there is ample record evidence to demonstrate Turner's liability under that standard as well. Ms. Kingham, I was asking Mr. Daugherty a version of this question. I've had a hard time wrapping my head around it. I could imagine that Turner was legally required to pay him worker's comp. And they broke the law by not paying him worker's comp, and instead paying him short-term disability. So the law has been broken, then they tell the IRS we paid him short-term disability. If that's the case, it seems like they didn't break the law when they told the IRS the truth. They broke the law before then when they didn't pay him the way they were supposed to pay him. Your Honor, in fact, Turner, despite what it now says about paying Mr. Daugherty short-term disability benefits was actually paying Mr. Daugherty worker's compensation benefits from the outset. That is because Mr. Daugherty complied with what the requirements of the DC Workers' Compensation Act are, which is that he reported the injury the night that it happened to his supervisor. He timely filed a claim application with the DC Office of Workers' Compensation, and his injury was incurred in the course of employment. Do you think that Turner knew they were paying him worker's comp? Turner did. There is at least a genuine dispute of material fact that Turner did know this. For example, in 2013, a Turner employee sent an email to Mr. Daugherty, notifying him that his payments would be coded as workers' compensation payments. I'm wondering if we did send this back and it did go to a jury, what would we be asking the jury to decide? I could imagine that the jury would need to decide, number one, did Turner know or really, really, really should have known that it was paying him worker's comp? And if so, did they tell the IRS something different? Do you think that some version of that would be a pretty appropriate jury instruction? Yes, Your Honor, I believe that the first part would certainly be a jury instruction that the jury would need to find that Turner either knew or should have known that they were paying Mr. Daugherty tax-free worker's compensation. Additionally, the jury will need to determine that they did so willfully, which can be shown by a showing of reckless disregard. Your Honor, Mr. Daugherty and Turner went before the DC Office of Workers' Compensation in 2014. Is that correct? Both 2014 and 2016. And the Office of Workers' Compensation reached certain conclusions about this. What relevance do those have? Those findings are in fact central to the notion that Mr. Daugherty was in fact receiving worker's compensation. For example, the mere fact that the office had jurisdiction to hear his claim reflects that the true nature of these payments was worker's compensation. Additional factors that occurred at the conference reinforced that conclusion. First, the office determined that Mr. Daugherty needed to be compensated for the benefits that had dropped below 66 and 2 3rds percent. And that is the amount that is mandated by state worker's compensation law. The OWC also found that Turner needed to reimburse Mr. Daugherty for medical costs, which again is a benefit that is expressly provided for in worker's compensation law. Did Turner ever challenge or seek review of those findings? There's nothing in the record to indicate that. In fact, the findings indicate that they were accepted as an uncontroverted final order. Turner additionally was represented by council at those conferences. And so I almost cannot feign ignorance about the outcome of those conferences, given that they were represented and the orders were adopted uncontroverted. Set at J465, where is that? Yes, 463 to 68 is the findings of the conferences. Thank you. Can you address the following hypothetical? Imagine that an employer forms an illegal contract that violates child labor. And that contract is void ab initio. Nevertheless, the employee, the minor does the work and the employer pays. And then the employer creates a W-2 or a 1099 or whatever and tells the IRS, we paid this person this much. Clearly the employer has broken the law by engaging in employing child labor. Do you think that they have violated the statute that's at issue in this case? Because the most relevant statute to this case is 26 U.S.C. 7434-A, which is concerned with the willful filing of fraudulent information returns. If those information returns denoted false representations made with at least reckless disregard for their veracity, that would constitute a violation of the statute. Yes, I'm wondering if you think that they would do that in my eyes. If the representation of the children as the employees was false, then that would be a violation of the statute. Well, it was false in the sense that it was illegal, wasn't false in the sense that the children actually did the work and the employer actually paid.  Okay, and then why is that? I don't know where that noise is coming from either. It would still be a violation of the statute because the underlying conduct was illegal. Thank you, I appreciate that answer. Because there is a genuine dispute as to Turner's willfulness, regardless of whether this court chooses to examine willfulness pursuant to an intent and knowledge framework or reckless disregard, a reasonable jury could conclude that Turner violated 26 U.S.C. 7434-A. Thank you. Thank you. Good morning, your honors. May it please the court, my name is Denise Tirado and I represent Turner Broadcasting System, the appellee in this matter. To be clear, your honors, to date, there has never been a finding by the IRS, any administrative agency or any court or the court below that Turner made a false statement or even a mistake with respect to the W-2s filed on behalf of Mr. Daugherty. To be sure, your honors, Mr. Daugherty himself testified that his W-2s for 2014, 2015 and 2016 accurately reflected the income paid by Turner. And in 2016, the IRS validated after Mr. Daugherty himself filed his own W-2 that Turner's W-2 was accurate. And that the way in which Turner calculated Mr. Daugherty's income for 2015 was the same way in the same manner that it calculated Mr. Daugherty's income for 2015. For the money in question, was Turner paying him workers' comp? So what Mr. Daugherty was paid is short-term disability, which is allowed on the DC Workers' Compensation Act as income replacement. So the first 10 weeks, he's actually paid instead of 66 2 3rds, he's paid 100% of his staff. Thereafter- I remember the percentages. If we think that Turner was legally qualified and required to pay him workers' comp, what do we do with that? That's not the issue before the court. The issue before the court is not whether or not Turner should have legally paid Mr. Daugherty workers' compensation. The issue is whether or not Turner willfully filed fraudulent information. Similar to the hypothetical that you posed earlier, Your Honor, even if the earlier conduct is unlawful, Turner did not have knowledge of that. They filed statements that they believed were accurate with the IRS. They did not willfully file fraudulent information. What was the whole purpose of going before the Office of Workers' Compensation? So Mr. Daugherty has several pending claims with the Office of Workers' Compensation. And- Could you repeat that? Repeat what you just said, please. That Mr. Daugherty has several claims for the Office of Workers' Compensation, Your Honor. And these were some of them, and it was Mr. Daugherty's appeal. The specific ones that issued did not address the taxability of those payments, just that he was entitled to workers' compensation. I believe he had, at that point, maybe four or five claims. Importantly, though, Your Honors, the decisions of the Office of Workers' Compensation for D.C. came after the IRS validated Mr. Daugherty's 2015 W-2 return. What do you mean they validated the return? So Turner filed W-2s for Mr. Daugherty in 2014, 2015, and 2016. Mr. Daugherty filed his own separate W-2 for 2015, appealing his W-2 that he believed to be incorrect. IRS asked Turner to validate it. They validated. The IRS agreed that it was correct. The IRS- Are you claiming that that's some sort of legal preclusion of his claim? No, Your Honor, I'm not saying it's legal preclusion. I believe it's evidence to show that Turner did not engage in fraud, did not knowingly file a false statement with the IRS. Had the IRS said this is wrong, then- Isn't the evidence that the Workers' Compensation, the D.C. Office of Workers' Compensation was exercising jurisdiction over this and telling Turner what should be paid, isn't that just as relevant then? No, Your Honor, I don't believe so because the Office of Workers' Compensation determination did not go to the taxability of the compensation or what should be- It goes to what it is. And what it is determines its taxability. Well, underlying, yes, the 66 and two-thirds. Mr. Daugherty was paid above the 66. What I'm wondering, this is a very unfair question. I'm going to ask it anyway. Why is Turner avoiding paying workers' comp under the regular workers' comp program in the first place? They weren't avoiding it, Your Honor. The workers, the payments to employees is actually more beneficial to employees. So under the old, to be clear, Turner Broadcasting System does not actually exist anymore, but under this, when it was and Mr. Daugherty was employed, the short-term disability program paid to employees was above and beyond what was required of the Workers' Compensation Act. So it was above and beyond the 66 and two-thirds that employees were to be paid under the D.C. Workers' Compensation Act. I could imagine that the employee is better off, although I know that's highly disputed, and that Turner is better off in terms of their tax liability, but that the reason they're both better off is because Turner's supposed to be paying taxes that it's not paying, which means even though Turner is better off and the employee is better off, the U.S. Treasury is worse off. So, Your Honor, I don't think that Turner is better off because they're paying more taxes. We do see it as a, because part of the scheme is that they are paying more income replacement, and while there is some write-off on the back end. I thought it was disputed. They pay 100% for a period of time, but then in the back end, they're paying 60% instead of 66%. At the end, they do pay that additional 6%, Your Honor, and that's what the Office of Workers' Compensation stated with Mr. Daugherty, but I know that, generally speaking, they do pay the 66. Is it common now that there are plans that supersede the Workers' Compensation Act with employers? Many decades ago in a different state, I knew a whole lot about workers' compensation. All the employers I ever knew either paid their workers' compensation or they faced the legal consequences of not having it. Are there, is this a common thing to have some other plan that supersedes workers' comp? I'm not familiar with most employers' plans, Your Honor. I do know that Turner did pay more. I have seen other employers also pay more than what is given under workers' comp, and the reason is, I believe, in some cases, immediately upon being injured, Mr. Daugherty went on a short-term disability plan. In some cases, it takes a long time to go through the appeals process, for example, in D.C. at the Department of Employment Services to find that your injury is workplace-related. I thought it was undisputed that Turner got tax benefit by structuring things the way that they are structured. That is undisputed. In our auditory response, we stated that- So then it goes back to my question. If they were legally required to be doing workers' comp, they didn't do what they were legally required to do, and as a result, they paid fewer taxes, isn't the loser here the U.S. Treasury? No, Your Honor, I don't think so, because I think that at the same token, because I wouldn't know the figures of the U.S. Treasury, to be honest, to round it out, to suggest that Turner somehow had a motive to make the U.S. Treasury lose out, I don't think that's the case here. I think ultimately what this case boils down to is whether or not Turner had knowledge of that. They did not. If you lose this case, could there be many, many more Mr. Daugherty's who file suits like this? Are you gonna be on the hook for a while? Your Honor, I don't believe so. The issue at here, the issue is the DC Workers' Compensation Act. I'm not familiar with how the Turner Broadcasting Short-Term Disability Plan interacted. I do know that they believe that they were fully compliant with the DC Workers' Compensation Act, and even if they weren't, Your Honors, the issue here is whether or not Turner willfully filed fraudulent information with the IRS. But willful can mean, in this context, just knowing that the statement that you were making was false, and making it for her, or making it despite, in a reckless manner, because you had ample reason to believe it's false, but yet you're making it anyway. Sure, Your Honor, so there's no evidence. There's zero evidence on the record that Turner knew. I mean, I think zero is, still might win, but I think zero is a stretch. I think it's a stretch. They told him, this is workers' compensation. Go ahead. I think there's a decent argument you could grant summary judgment from Daugherty. Your Honor, I mean, if the statement is false, and you've been put on notice, ultimate time, you know, many times, that these are workers' compensation payments, but you instead code them that they're not, why isn't that, if we, it all stems on, obviously, the finding that they are workers' compensation payments, but if they are, why isn't that reckless disregard for the truth of the matter? Sure, Your Honors. Let me first start with the emails. Those emails came from one individual in risk management. There's no evidence, and I can tell you, Your Honors, Mr. Paul Miller had no responsibility for compensation. In fact, in that same email, he said, let us discuss what the compensation benefits, folks, to determine how this pay is going to work out. Mr. Miller's email in of itself does not show knowledge that Turner, as a larger company, knew that with respect to Mr. Daugherty, it was filing, willfully filing fraudulent information with the IRS. Did his email distort company policy or accurately reflect it? It actually distorts company policy and the law. No disrespect to Mr. Miller, it was incorrect, and if you saw in the email, he actually said, it will be coded workers' compensation, but then at the same time said that they would tax the income. So Mr. Miller, with no disrespect to him, did not really understand what he was speaking about, and he was just in risk management. Separately, Your Honors, with respect to the knowledge issue and stating that there was repeated emails from Mr. Daugherty and he was raising his hand, again, Mr. Daugherty has admitted that his W-2s accurately reflected the income he received. The IRS has validated his 2015. Mr. Daugherty did not further appeal. He did not appeal his 2014 W-2s. He did not appeal his 2016 W-2s. There is no evidence that Turner willfully filed fraudulent information. With respect to whether or not knowledge equates to intent, even under a reckless disregard standard, the evidence doesn't rise to that. I need to take a brief recess. Yes, Your Honor. Your Honor, this Honorable Court is again in session. My apologies, Ms. Giraldo, you may continue. My apologies, Your Honor, I'm not quite sure where we were. So I'm gonna go to another point that was raised by the amicus. And Judge Walker asked the question, if the underlying law is violated, does that equate to a violation of IRC 743? And I'm gonna take a brief, and it is our position that it does not. Because a violation of an underlying law does not equate to knowledge and to the intentional and willful filing of fraudulent information with the IRS. So even if there is that underlying violation, and for example, hypothetically, if you were to find if a company were to violate the underlying law, did not know that violation, or perhaps knew, but did not intentionally file fraudulent information with the IRS, there would not be a violation of 743. I think what complicates it for me in my head is it's sort of the mislabeling that makes it illegal. So then it's a little bit odd to say, well, the mislabeling that made it illegal for tax purposes is not fraudulent for tax purposes. Let's be clear, there's never been any finding that Turner short-term disability program is fraudulent or illegal, or violates the DC workers compensation. But I'm exploring what might be a way for you to win, even if I disagree with you about that. But I'm not sure it's a way for you to win because I think there probably is a difference between my child labor law hypothetical and this, because here, the thing that makes the original law breaking happen is so interconnected with how it's reported on the tax. It would be interconnected if there was not. The reality here is the evidence before the lower court and before your honors. So do you think, I mean, maybe, do you think that the district court should be reversed here? To be sent back if we find that there's a genuine dispute material fact regarding Turner's knowledge about whether it should have been paying him workers' comp? No, your honors, because knowledge is only one piece of the fraud, right? So if you were to accept that Turner had knowledge, if you were to accept that, you'd also to show that there was a fraudulently filed with the IRS, you'd also have to show an intent to deceive and a false misrepresentation. You don't get to that if there's even an underlying violation. But to be clear, to date, there has been no finding by anyone in DC, Department of Employment Services, Office of Workers' Compensation, IRS, or the district court that Turner's short-term disability program violated DC Workers' Compensation Act. Indeed, the issue here, your honors, is whether or not Turner willfully filed fraudulent information with the IRS. And to date, there has been no finding by the IRS, the lower court, or any administrative agency. But I don't think that's required by the statute. Whether there was another finding? Yeah. It's not, your honor, it's just evidence to show that there is to date no evidence that they did. So your honors, with respect to the filings that have been made, Mr. Daugherty could have appealed them. In one's respect, he's in somewhat did by filing his own W-2 and Turner's was valid. There's been no finding, any appeal, anything that Turner filed, willfully filed fraudulent information. And there's, in our minds- That's filing the lawsuit essentially was, is that appeal for a jury to make that? Well, originally he could have also gone to the IRS. And our point is, is that this time we do not see any evidence on the record, and there is no evidence- Where are you talking about no finding? The case before us here is a summary judgment case. There are never findings in a summary judgment case. Correct, your honor, I was talking about the Internal Revenue Service. Internal Revenue Service, there's no findings. There was no findings, but it was incorrect or fraudulent. What you're just saying is that the statement was essentially factually correct, and therefore there was no fraud. Correct, your honors. I assume you're right about maybe this is DC specific, and Turner is not gonna be facing worse problems than Mr. Daugherty, if we rule against you, but it might've settled. Thank you, your honors. All right, if there's no further questions, we have your argument. May I briefly just state, Judge Suntell, in 2006, you were a moot court judge for me with Justice Thomas and Judge Talman at Catholic University. So it's a privilege to argue before you today. Thank you. Thank you. Thank you, counsel. Did counsel for amicus have any time left? We'll give you three minutes for rebuttal. Thank you. First, to respond to Turner's counsel's argument that Mr. Daugherty's W-2s were accurate because they reflected the total amounts that he was paid. In fact, that is the very basis of their inaccuracy because a W-2 asks for gross taxable income, not the total amount that an employee is paid. And so the fact that they accurately represented the total amounts is what constitutes their inaccuracy. Second, as a judge, as for knowledge, as an initial matter, knowledge is an inquiry that is best suited for a jury on remand. All Mr. Daugherty must establish here is a genuine dispute of material fact that Turner had knowledge as to the fact that he was receiving non-taxable workers' compensation that was improperly being taxed. That knowledge is evident not only from the emails to Mr. Daugherty, but also Mr. Daugherty's repeated emails to the company, notifying it to that effect. Additionally, Turner's own policies and procedures reflected that the true nature of these payments was workers' compensation. For example, it was only in Turner's workers' compensation policy, not its short-term disability policy, that an employee was entitled to medical costs reimbursements, which is what the Office of Workers' Compensation concluded that Mr. Daugherty was entitled to. And there's nothing in the record to indicate that Mr. Daugherty did not receive those reimbursements. Third, the DCA, the DC Workers' Compensation Act requires at a minimum that Mr. Daugherty receives 66 and 2 3rds percent of his salary tax-free. And so the mere fact that, regardless of whether Turner was paying at times 100% of his salary, does not change the fact that he was entitled to 66 and 2 3rds percent of that amount tax-free. And third, the IRS has not made a determination as to the correctness of Mr. Daugherty's W-2s. The letter from the IRS to Turner was simply the IRS notifying Turner that Mr. Daugherty had disputed his W-2s. It did not constitute any sort of certification. In fact, all it did was enable Turner to itself certify that it thought the W-2s were correct. It did not represent a determination from the IRS. And Mr. Daugherty's W-2s were incorrect. To conclude, this court should reverse and remand. Thank you. Thank you. Ms. Kingham, you were appointed by the court to represent the interests of MSQRI in this case, and you did yourself quite well. We thank you for your service and the Georgetown. Thank you. We'll take the matter under review.
judges: Wilkins, Walker, Sentelle